United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELINDA ANNE LOTT,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN,<br><br>　　　　Defendant. | Case No. 14-cv-01421-JSC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16 & 19 |

Plaintiff Melinda Ann Lott seeks social security disability benefits for a combination of impairments including transverse myelitis, back and bilateral hip and leg pain, hand problems, and chronic obstructive pulmonary disease. Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment. (Dkt. Nos. 16, 19.) Because the determination of the Administrative Law Judge ("ALJ") that Plaintiff's pain testimony was not credible is supported by specific clear and convincing reasons, Plaintiff's motion for summary judgment is DENIED and Defendant's cross motion is GRANTED.

## LEGAL STANDARD

A claimant is entitled to disability insurance benefits if she can demonstrate that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that can be expected to result in death or last for a continuous period of not less than

12 months. 42 U.S.C. § 423(d)(1). The ALJ conducts a five-step sequential inquiry to determine whether a claimant is entitled to benefits. 20 C.F.R. § 416.920. At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity (i.e., if the plaintiff is currently working); if the claimant is not engaged in substantial gainful activity, the second step asks if the claimant has a severe impairment or combination of impairments (i.e., an impairment that has a significant effect on the claimant's ability to function); if the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the "Listings"); if the claimant does not have such a condition, the fourth step assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work; if the claimant is not capable of performing past relevant work, the fifth and final step asks whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. *Id.*; §§ 404.1520(b)-404.1520(f)(1).

## THE ADMINISTRATIVE RECORD

Plaintiff was born on January 31, 1958. (AR 203.) She has three grown children, and currently lives with her daughter and two grandchildren. (AR 62.) She has been unemployed since 2008 when she was laid off from her position as a loan processor with World Savings Bank. (AR 64.) Prior to her bank employment, she worked for Carrow's restaurant for nearly 20 years, first as a waitress and then as a manager. (AR 64-65.)

Plaintiff alleges the following severe impairments: transverse myelitis, back and bilateral hip and leg pain, hand problems, and chronic obstructive pulmonary disease ("COPD"). The alleged onset date of the lower back, hip and leg pain coincides with her lay off as she alleges that at the time of her lay off she was in too much pain to find other work. (AR 206.) In November 2010, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI, respectively. (AR 29.) The applications were denied initially, on reconsideration, and after a hearing by an ALJ in April 2013. (*Id.*) The Appeals Council denied review, making the ALJ's decision final. (AR 5.) Thereafter, Plaintiff

commenced this action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I. Medical Evidence

Plaintiff was diagnosed with transverse myelitis, an inflammation of the spinal cord, in the early 2000s while a patient at a Kaiser Permanente facility in Union City, California. (AR 209, 334.) It began as heavy, tingling feeling in her legs, followed by a severe burning pain in her back. (AR 209.) She had two MRIs in 2002 and 2006. (*Id.*) She also had her right hip replaced in 2006 or 2007. (AR 249, 334.) Plaintiff received medical care at Kaiser until 2009 when she lost her health insurance due to her lay off; thereafter, she occasionally sought treatment for acute conditions in the emergency room at Highland Hospital. (AR 66-67.) The record contains some treatment records from both Kaiser and Highland hospital, but neither set of records discuss Plaintiff's transverse myelitis or hip replacement except in summarizing her medical history. (AR 248-330, 438-444, 458-485.) Plaintiff has not submitted medical evidence from a treating source.

### A. Dr. Calvin Pon

State examining physician Dr. Calvin Pon examined Plaintiff on April 11, 2011. (AR 334.) Dr. Pon noted Plaintiff's chief complaints as "bilateral hand numbness, low back pain with associated bilateral lower extremity pain and numbness, and bilateral hip pain." (*Id.*) In taking her medical history, he noted that Plaintiff had the hand pain for a couple of years and when asked about whether she had been told if she had carpal tunnel syndrome, she stated "maybe a little of it." (*Id.*) Plaintiff also indicated that she had been diagnosed with transverse myelitis approximately 8 years ago. (*Id.*) Plaintiff further indicated that she had a right hip replacement in, 2006 or 2007 and she began experiencing pain in her left hip two years ago and an x-ray of her left hip indicated that it was "deteriorating – eventually will need a left hip replacement." (*Id.*)

In his physical examination of Plaintiff, Dr. Pon noted that Plaintiff was 5'4" and weighed 270 pounds. (AR 335.) She had a stable gait and did not use an ambulatory aid. (*Id.*) Although she was able to get on and off the exam table, her movements were slow. (*Id.*) Dr. Pon noted that Plaintiff had active range of motion in her upper extremities and 5/5 pinch and grip strength. (*Id.*) With respect to her lower extremities, she had normal active range of motion. (*Id.*) Based on his examination, he concluded that she should be able to stand and/or walk for a total of

1  approximately 4 hours during an 8 hour workday. (AR 336.) She should be able to sit for a total
2  of 6 hours during an 8 hour workday. (*Id.*) Stooping, crouching, kneeling and squatting should be
3  limited to occasionally, as should climbing stairs, ladders, and crawling. (*Id.*) He found that she
4  should be able to perform bilateral pushing and pulling arm/hand control on a frequent basis
5  notwithstanding her complaints of bilateral hand numbness. (*Id.*) The same was true with respect
6  to bilateral lower extremity pushing leg/foot control. He concluded that there was no limit in her
7  ability to perform gross and fine manipulative tasks with both hands or reach bilaterally, although
8  there might be some symptomatic limitations. (*Id.*)

### B. Dr. Anselmo Mamaril

Dr. Mamaril is a state agency medical consultant whose opinions were generally consistent with those of Dr. Pon. He concluded that Plaintiff was capable of 2-4 hours of standing and walking out of 8 hours and could sit for 6 hours in an 8 hour workday. (AR 372.) Dr. Mamaril noted that Plaintiff had pain from degenerative joint disease (osteoarthritis) of the hips, but found that degenerative disc disease and obesity were the restricting factors with respect to any postural limitations. (AR 373.) Dr. Mamaril also found Plaintiff's pain reports only partially credible given that she had no significant limitations on her range of motion, no hand or gait dysfunctions, no difficult arising from a chair or getting on or off the exam table, and she was able to do light household chores, drive, and shop. (AR 376.) With respect to her transverse myelitis he noted that "MER from Kaiser Permanente mentioned of pain and back pain and with diagnosis for Transverse Myelitis (4/10/08, 9/26/08). Ortho CE report on 4/11/11 mentioned of remote past history of Transverse Myelitis about 8 years ago by MRI. Claimant has no evidence of active T. Myelitis as per normal neurological findings as reported on the Current CE. T. Myelitis is non severe." (AR 378.) He also found that she did not have a medically determinable impairment with respect to either her complaints of hand numbness or poor circulation. (*Id.*)

### C. Dr. Edie Glantz

Dr. Glantz is a state agency examining physician who examined Plaintiff on June 27, 2012. Dr. Glantz indicated that Plaintiff's chief complaints were transverse myelitis, hypertension, GERD, and hypercholoesterlemia. (AR 411.) Dr. Glantz noted no issues with Plaintiff's upper

4

1  extremities and concluded that Plaintiff had normal range of motion in her lower extremities,
2  although she noted that Plaintiff had left hip pain with internal rotation of her left leg. Dr. Glantz
3  observed that Plaintiff's gait was "wise-based"—presumably wide-based—and that she did not
4  require the use of an assistive device to walk across the examination room, although she brought a
5  cane with her. Dr. Glantz concluded that Plaintiff can stand or walk for 6 hours in an 8 hour day
6  and that she can sit without functional limitations. (AR 416.) Dr. Glantz found that Plaintiff had
7  no limitations with her upper extremities, but had frequently limited push pull in the lower left
8  extremity, and occasionally limited in the right lower extremity. (*Id.*)

### D. X-ray reports

Plaintiff had x-rays taken on July 14, 2011 of her hips and lumbar spine. (AR 359-360.) The hip x-ray indicates that "there is significant narrowing of intra-articular space of left hip joint with mild periarticular osteophytic changes, consistent with moderate to severe osteoarthritis." (AR 359.) With respect to her lumbar spine, the x-ray indicates that she has narrowing of disc spaces at L2-3 and L3-4 with subchondral sclerosis and marginal osteophytosis consistent with degenerative disc changes. (AR 360.)

## II. Plaintiff's ALJ Hearing Testimony

Plaintiff, appearing pro se, testified that she currently lives with her daughter and two granddaughters in Union City. (AR 62.) Her daughter is helping support her financially, and she gets money from welfare and food stamps. (AR 63.) She last worked in June of 2008 when she was laid off from her job as a loan processor with World Savings Bank. (AR 64.) She has not worked since her lay off because she is in pain constantly and the only way she can get anything accomplished is on medication. (AR 65.)

The pain began in 2001 or 2002 and she was diagnosed with transverse myelitis. (*Id.*) She also had a total right hip replacement, which had to be redone a year later because it kept dislocating. (AR 67.) During this time Plaintiff was a patient of Dr. Sharma at Kaiser until 2008 or early 2009 when she lost her health insurance; since then she has not had regular medical care. (AR 66.)

Plaintiff has a variety of ongoing issues. Her left hip is causing her pain and her left leg is

5

"useless." (AR 66, 72.) The pain in her legs makes it difficult to walk, although she does not like to use a cane. (AR 72.) Plaintiff has pain in her feet and has to keep her feet elevated a couple of times a month. (AR 68.) She also has significant pain in her lower back and has to "constantly sit for a couple of minutes and then go back to what [she] was doing and then sit for a couple of minutes." (AR 69.) She takes Nortriptyline and Viocodin "daily" for the transverse myelitis. She takes the Vicodin when she has to do something. (*Id.*) "If I'm just going to be laying in bed watching TV I try not to take it but if I have to, if I know I have to get up and like cook dinner or go to the grocery store or something, then I have to take it." (*Id.*) She never received any treatment for her back because they said there was nothing they could do. (*Id.*) Plaintiff drinks three to four alcoholic drinks a day when she runs out of pain medication. (AR 70.) Because she does not have insurance she can only obtain pain medication when she goes to the emergency room. (AR 71.)

Plaintiff performs some chores around the house, including washing dishes and laundry. (AR 72.) She helps with the cooking a couple of times a week. (*Id.*) She generally does not leave the house except for big family gatherings and going to the grocery store. (*Id.*)

### III.   Vocational Expert ("VE") Testimony

Ms. Guillory, the VE, testified that Plaintiff's past work as a loan processor would have been classified as sedentary and her work as a restaurant manager would have qualified as light. The ALJ posed three hypotheticals to the VE. First, the ALJ asked whether "an individual of the claimant's age, education and work background limited to light; person can stand and/or walk four hours, sit for six hours; occasionally stoop, crouch, kneel, squat, crawl and climb stairs and ladders. The individual can frequently bilaterally push and pull with the upper extremities and lower extremities. No limitation on reaching." (AR 75.) The VE testified that such a person would be able to perform Plaintiff's past work as a loan processor. Second, the ALJ asked whether an individual limited to medium work who could "frequently push and pull with the lower – left lower extremity, occasionally push and pull with the right lower extremity; frequently climb stoop, kneel and crouch" could perform any of Plaintiff's past work. (AR 75.) The VE testified that such an individual would be able to perform the past relevant work of loan processor,

1    restaurant manager, or waitress. (AR 75-76.)  For the final hypothetical, the ALJ asked whether
2    an individual limited to sedentary work who requires a sit/stand option, can stand and/or walk no
3    more than two hours, must be able to adjust positions at will, can perform occasional stooping and
4    crouching, no climbing, crawling, squatting or kneeling, and occasional use of the lower left
5    extremity could perform Plaintiff's past work. (AR 76.)  The VE testified that the individual
6    could perform Plaintiff's past work as a loan processor; however, if the person was "off task 15
7    percent of the time" then the individual would be getting to the very high limits of being able to
8    perform the job, but likely would be able to do so as long as it did not exceed 15 percent. (*Id.*)

## IV.    ALJ's Findings

In an April 10, 2013 decision, the ALJ found Plaintiff not disabled under sections 223(d) and 1614(a)(3)(A) of the Social Security Act using the five-step disability analysis. (AR 29-35.) At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 9, 2008. (AR 31.) At the second step, the ALJ found that Plaintiff had the following severe impairments: transverse myelitis, status post two right hip replacements, osteoarthritis of the left hip, degenerative disc disease of the lumbar spine, hyperlipidemia, morbid obesity, and hypertension. (*Id.*)  At the third step, the ALJ found that Plaintiff did not have impairments or a combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 32.) Between the third and fourth steps, the ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") to perform light work with the additional limitations of only standing and/or walking 4 hours in an 8-hour workday, sitting 6 hours in an 8-hour workday, occasionally stooping, crouching, kneeling, squatting, crawling, and climbing stairs and ladders, and frequently pushing and pulling with the upper and lower extremities bilaterally, and no limitation on reaching. (AR 32.) Thereafter, at the fourth step, the ALJ found that Plaintiff was capable of performing her past relevant work as a loan processor. (AR 35).  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. section 405(g), the Court has authority to review the ALJ's decision

to deny benefits. When exercising this authority, however, the "Social Security Administration's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallenes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Ninth Circuit defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is "more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (internal citations and quotation marks omitted); *Andrews*, 53 F.3d at 1039. To determine whether the ALJ's decision is supported by substantial evidence, the reviewing court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal citations and quotation marks omitted); *see also Andrews*, 53 F.3d at 1039 ("To determine whether substantial evidence supports the ALJ's decision, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.").

Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are roles reserved for the ALJ. *See Andrews*, 53 F.3d at 1039; *Magallenes*, 881 F.2d at 750. "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal citations and quotation marks omitted); *see also Batson v. Commissioner*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."). "The court may not engage in second-guessing." *Tommasetti*, 533 F.3d at 1039. "It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the Commissioner's determination as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, not the Court's, to resolve conflicts in the evidence." *Bertrand v. Astrue*, No. 08-CV-00147, 2009 WL 3112321, at *4 (E.D. Cal. Sept. 23, 2009).

**DISCUSSION**

The only issue raised on appeal is whether the ALJ properly rejected Plaintiff's pain

testimony as not credible.  "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible."  *Garrison*, 2014 WL 3397218, at *15.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted).  "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering *specific, clear and convincing reasons* for doing so."  *Id.* (emphasis added) (internal citations and quotation marks omitted).  This "clear and convincing" standard is not an easy requirement to meet, and "is the most demanding [standard] in Social Security cases."  *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).  "General findings are an insufficient basis to support an adverse credibility determination."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimant[] [is] not credible."  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Applying the two-step analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (AR 33.)  In making this determination, the ALJ did not find that Plaintiff was malingering; she thus was required to set forth specific, clear and convincing reasons for rejecting Plaintiff's pain testimony.  *See Lingenfelter*, 504 F.3d at 1036.

Because symptoms regarding pain are difficult to quantify, the SSA regulations list relevant factors to assist ALJs in their credibility analysis.  These factors include:

> (1) The individual's daily activities;
> (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) Factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

> (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."). These factors are intended to "ensure that the determination of disability is not a wholly subjective process, turning solely on the identity of the adjudicator." *Bunnel v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

Here, the ALJ based her adverse credibility finding on (1) Plaintiff's sparse treatment records, (2) that the treatment records which do exist involve treatment unrelated to Plaintiff's alleged disabilities, and (3) that the pain testimony is inconsistent with the medical evidence. Plaintiff contends that the ALJ erred in relying on her sparse treatment records which involve routine care because Ms. Lott has no health insurance and therefore cannot be penalized for failing to seek medical care. Plaintiff further contends that she treats her ongoing pain with narcotics which is not a form of conservative treatment. The Court addresses each argument in turn.

"[A]n unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" provides one basis on which an ALJ can discredit an allegation of disabling pain. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "While there are any number of good reasons for not [seeking treatment], a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Id.* (internal citations omitted). Where a claimant suffers from financial hardships, a failure to obtain treatment is not a sufficient reason to deny benefits. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("Orn's failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding. We have held that an unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse

credibility finding unless one of a number of good reasons for not doing so applies. But, disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.") (internal citations and quotation marks omitted); *see also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (failure to follow treatment plan is not a legitimate reason for rejecting a claimant's pain testimony when the failure is due to lack of resources); *Gamble v. Chater*, 68 F.3d 319, 320–22 (9th Cir. 1995) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.") (internal citation and quotation marks omitted).

The ALJ here found that Plaintiff's pain testimony was undermined by the fact that "[s]ince the alleged onset date there are sparse treatment records. They primarily relate to routine treatment and the non-durational left foot pain." (AR 33.) Plaintiff contends that her sparse treatment records are attributable to her lack of health insurance; this assertion, however, is belied by the record as Plaintiff did in fact seek medical treatment during the time she lacked health insurance, but did so for routine care or reasons unrelated to her alleged disabilities. In May 2011, Plaintiff visited the emergency room after sustaining a crush injury to her shins a week prior—at that time she was only taking aspirin for pain relief and rated her pain at 4 out of 10. (AR 407-408.) The treatment notes do not indicate that she complained of pain due to her transverse myelitis or osteoarthritis during this visit. In February and March 2012, Plaintiff had at least two visits to the emergency room for left foot pain which was diagnosed as cellulitis. (AR 399-406, 454-473.) The treatment notes for these visits do not indicate that Plaintiff complained of pain related to her transverse myelitis or hip pain. At the end of March 2012, she presented with a cough and had a chest x-ray which did not show any active chest disease.[1] (AR 454, 478-479.)

---

[1] Plaintiff submitted additional medical evidence to the Appeals Council for medical visits in March to July 2013. (AR 474-485.) The Appeals Council declined to consider this evidence as it found that the records were either duplicates of those previously submitted or post-dated the ALJ's decision. (AR 6.) While some of the records are duplicates, the submission also includes notes from an April 2, 2013 visit to the Highland Hospital Clinic wherein Plaintiff complained of worsening pain due to her transverse myelitis with hip, bilateral shoulder, and upper and lower back pain. (AR 475-477.) Although Plaintiff has not raised a *Brewes* issue, the Court has reviewed the evidence and concludes that it would not have altered the decision here. *See Brewes v. Commissionar of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir.2012) (awarding a claimant benefits after finding that additional evidence submitted to the Appeals Council after the ALJ

Thus, while Plaintiff was uninsured a significant portion of the time since her alleged disability onset, there are nonetheless records of medical treatment for this time period, and these records do not indicate that Plaintiff was complaining of severe pain due to her transverse myelitis or osteoarthritis.

Further, Plaintiff's medical records from 2008-2009—when she did have health insurance—do not reflect ongoing treatment for pain related to her transverse myelitis or hip osteoarthritis, but rather, treatment for routine medical issues. (AR 250 (4/10/08: treatment for "reactive airway disease"), AR 252 (6/30/08: "dry cough with intermittent chest tightness and wheezing"), AR 254 (8/12/08: "left ear pain"), AR 256 (9/26/08: bariatric consult), AR 261 (3/10/09: routine gynecological exam), AR 264 (4/1/08: chest tightness).) These records both pre and post-date Plaintiff's October 9, 2008 disability onset date. An ALJ may discount a claimant's symptom testimony where the claimant describes severe and disabling symptoms but has sought or received only minimal or conservative treatment for her complaints. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Indeed, "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96–7p. Thus, the ALJ's reliance on the inconsistency between Plaintiff's complaints and her treatment record qualifies as a clear and convincing reason, supported by substantial evidence in the record, for rejecting Plaintiff's subjective symptom testimony here.

Plaintiff's suggestion that her lack of treatment records can be explained by her self-medication with narcotics, which is not conservative treatment, is no more availing. As an initial matter, Plaintiff's testimony was inconsistent as to how frequently she takes the Vicodin. On the one hand, she testified that she left Kaiser with "a good-sized prescription" that lasted "probably about a year or so ago – because I don't take it every day. I just take it, you know, like I said when I need it so it lasts me a while." (AR 71.) Yet she also testified that she takes Vicodin

---

rendered his decision would have led to a favorable decision had the evidence been available to the ALJ at the claimant's hearing). Rather, one isolated complaint of pain consistent with her allegations of disability right before the ALJ hearing suggests, if anything, that notwithstanding Plaintiff's lack of health insurance she would in fact be willing to visit the doctor for hip and back pain.

"daily" and "when I have to do something." (AR 69.) But daily Vicodin use is not supported by the medical evidence. Plaintiff testified that the only time she obtained more Vicodin after she stopped going to Kaiser in 2009 was when she went to the emergency room. (AR 71.) As discussed *supra*, the medical records do reflect a cluster of emergency room visits approximately every 12 months or so in 2011 and 2012 wherein Plaintiff received a prescription for Vicodin; however, these visits reflect relatively small refills of Plaintiff's prescription given the passage of time between visits. (AR 409 (5/28/11: unknown quantity), AR 408 (6/6/11: 15 tablets), AR 405 (2/26/12: 30 tablets), AR 462 (3/1/12: 30 tablets), AR 467 (3/19/12: 30 tablets).)

Even if this evidence was sufficient to show that Plaintiff was self-medicating, this treatment is more akin to conservative or routine care given that Plaintiff has not alleged that the medication side effects incapacitate her, and instead, indicated that the medication enables her to perform tasks such as grocery shop or cook dinner (AR 69). *See, e.g.*, *Medel v. Colvin*, No. 13-2052, 2014 WL 6065898, at *8 (C.D. Cal. Nov. 13, 2014) (affirming ALJ's characterization of the plaintiff's treatment as conservative where his medical records showed that he had been "prescribed only Vicodin and Tylenol for his allegedly debilitating low-back pain."); *Stephenson v. Colvin*, No. CV 13-8303, 2014 WL 4162380, at *9 (C.D. Cal. Aug. 20, 2014) (concluding that the ALJ's discounting of Plaintiff's credibility was supported by substantial evidence where the ALJ characterized Plaintiff's medical treatment as routine and conservative notwithstanding the plaintiff's Vicodin use because the plaintiff "did not allege that Vicodin incapacitates him. Rather, after taking Vicodin, he does household chores, gets his son ready for school, takes a walk, watches television, sometimes goes to the store, and drives a short distance to pick up his son from school"); *Morris v. Colvin*, No. 13–6236, 2014 WL 2547599, at *4 (C.D. Cal. June 3, 2014) (ALJ properly discounted credibility when plaintiff received conservative treatment consisting of physical therapy, use of TENS unit, chiropractic treatment, Vicodin, and Tylenol with Vicodin). The cases cited by Plaintiff do not suggest otherwise. *See, e.g.*, *Tunstell v. Astrue*, No. 11-9462, 2012 WL 3765139, at *4 (C.D. Cal. Aug. 30, 2012) (concluding that the ALJ's adverse credibility finding based on conservative treatment was not justified where the plaintiff testified that Vicodin and other narcotic pain medications did not provide pain relief); *Nevins v. Astrue*, No. 11-0828,

2011 WL 6103057, at *5 (C.D. Cal. Dec. 8, 2011) (rejecting ALJ's adverse credibility finding predicated on the plaintiff's limited and conservative treatment where the plaintiff took numerous narcotic pain medications, underwent surgery, had multiple steroid injections and did six months of physical therapy).

Moreover, the medical opinion evidence supported the ALJ's finding that Plaintiff's subjective complaints were not entirely credible. *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir.1999) (a conflict between subjective complaints and the objective medical evidence in the record is a sufficient reason that undermines a claimant's credibility). Plaintiff has not offered any treating source evidence regarding her disability or functional limitations. The ALJ thus properly relied on the opinion of Dr. Calvin Pon, the state agency consultative examiner who conducted a physical examination and concluded that Plaintiff had the following limitations: (1) chronic bilateral hand numbness, (2) history of transverse myelitis approximately 8 years ago, now with chronic residual low back pain and associated bilateral lower extremity pain and numbness, (3) status-post right hip replacement with chronic residual right hip pain, and (4) chronic left hip pain, probably degenerative arthritis. (AR 336.) Given these limitations, Dr. Pon found that Plaintiff should be able to stand and/or walk for a total of approximately 4 hours during an 8 hour workday and sit for a total of 6 hours during an 8 hour workday with limits on occasional stooping, crouching, kneeling, and squatting.[2] (*Id.*) The ALJ also relied on the residual functional capacity assessment of Dr. Mamaril, a state agency consultant, who opined that Plaintiff could stand and or walk at least 2 hours in an 8 hour workday and sit for a total of 6 hours during an 8 hour workday with unlimited push/pull with her lower extremities and no limits on her upper extremities. (AR 371-374.) Dr. Mamaril noted that Plaintiff had severe hip and back impairments, but noted only a moderate to slight limitation in her range of motion on each, respectively. (AR. 378.) With respect to Plaintiff's transverse myelitis he noted that she "has no evidence of active T. Myelitis as per normal neurological findings as reported on the current CE.

---

[2] Dr. Glantz—the other state agency consultative examiner—offered an even less restrictive view of Plaintiff's functional capacity; however, the ALJ assigned little weight to her opinion because she did not notice that Plaintiff had surgical scars and provided no consideration of Plaintiff's hip or back issues. (AR 34-35, 411-417.)

1  T. Myelitis is non severe." (*Id.*)

2  The ALJ properly considered this opinion evidence, which showed that Plaintiff was not as limited as she claimed. (AR 34.) *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir.1995) (ALJ may consider doctor's belief that claimant can work); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of examining doctor serves "as substantial evidence supporting the ALJ's findings [regarding] physical impairment"). A lack of objective medical evidence corroborating a claimant's alleged symptoms is an appropriate factor for discounting a claimant's credibility when, as here, the ALJ's credibility finding is supported by other clear and convincing reasons. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in assessing credibility, ALJ may consider whether medical evidence is consistent with the alleged symptoms).

In sum, the ALJ provided clear and convincing reasons for her adverse credibility finding; namely, that Plaintiff's subjective pain complaints were inconsistent with (1) the sparse treatment records which reflected treatment for matters unrelated to her alleged disabilities and (2) the objective medical evidence in the record. These reasons provide substantial evidence to support the ALJ's adverse credibility finding. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir.2008); *Lingenfelter*, 504 F.3d at 1040.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is DENIED and Defendant's cross motion for summary judgment is GRANTED. Judgment will be entered in favor of Defendant and against Plaintiff.

This Order disposes of Docket Nos.16 and 19.

**IT IS SO ORDERED.**

Dated: April 10, 2015

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE